## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| Tony Manuele, Jr. d/b/a Tony's Sporting Goods,<br>    Plaintiff | )<br>)<br>) |
| v. | )    07-3163<br>) |
| Acting Director of Industry Operations, Bureau of<br>Alcohol, Tobacco, Firearms and Explosives,<br>    Defendant | )<br>)<br>) |

### MOTION FOR LEAVE TO FILE INSTANTER
### PLAINTIFF'S REPLY TO DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

Now comes the Plaintiff, **Tony Manuele, Jr. d/b/a Tony's Sporting Goods**, by his attorney Michael J. Logan, Ltd. and moving this Court for leave to file instanter Plaintiff's Reply to Defendant's Motion for Summary Judgment and in support thereof states as follows that:

1. On or about March 6, 2008, Defendant filed its Motion for Summary Judgment in the above-entitled cause.

2. Said Motion, with exhibits, was approximately 362 pages long plus copies of the regulations of the ATF.

3. Under the local rule, Plaintiff was required to reply to said Motion for Summary Judgment within 14 days.

4. It was unreasonable to expect Plaintiff to respond to such lengthy motion within said time frame.

5. This motion for leave to file instanter is not for the purpose of delay or inconvenience of any party.

6. Since the filing of the Motion for Summary Judgment, Plaintiff has suffered certain medical problems, making him less available to counsel to formulate such response.

Wherefore, Plaintiff moves this Court to grant leave to file his reply to Defendant's Motion for Summary Judgment instanter.

Dated this 7th day of April, 2008.

**Tony Manuele, Jr.** d/b/a **Tony's Sporting Goods**

By: _____ /s/ Michael J. Logan _____

Michael J. Logan
Michael J. Logan, Ltd.
837 S. Fourth Street
Springfield, IL 62703
Tel: 217-522-8880
Fax: 217-522-8887

## PROOF OF SERVICE

The undersigned, being duly sworn on oath, states that she served the enclosed pleadings by placing a copy of same in a U.S. Post Office mailbox, postage prepaid, in a sealed envelope on the **7th** day of April, 2008, addressed to the person(s) of record as follows:

**U.S. Attorney's Office**
**ATTN: James Lewis**
**318 S. Sixth Street**
**Springfield, IL 62701-1806**

_/s/ Nicole A. Lawson_

**Nicole A. Lawson**
**Paralegal**

**Michael J. Logan, Ltd.**
**Michael J. Logan**
**837 S. Fourth Street**
**Springfield, IL 62703**
**217-522-8880**
**217-522-8887 Facsimile**

**E-FILED**
Monday, 07 April, 2008 04:24:05 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| Tony Manuele, Jr. d/b/a Tony's Sporting Goods, | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 07-3163 |
| | ) |
| **Acting Director of Industry Operations, Bureau of** | ) |
| **Alcohol, Tobacco, Firearms and Explosives,** | ) |
| Defendant | ) |

### PLAINTIFF'S REPLY TO DEFENDANT'S MOTION
### FOR SUMMARY JUDGMENT

Now comes Plaintiff, **Tony Manuele, Jr.** d/b/a **Tony's Sporting Goods**, by his attorney Michael J. Logan, Ltd., and in reply to the Defendant's Motion for Summary Judgment states as follows.

### I. INTRODUCTION

Plaintiff concedes that the Introduction of Defendant's Motion for Summary Judgment is correct.

### II. MATERIAL FACTS CLAIMED TO BE UNDISPUTED

#### A. The Final Notice

Plaintiff states that as to paragraph

1. he concedes

2. he disputes whether the alleged failure was willful.

3. he concedes

4. he disputes that 27 C.F.R. Sec. 478.125(a) is the only controlling section dealing with the requirement of a dealer to keep records of acquisition and disposition of firearms

5. he concedes

6. he disputes his failure to maintain records in bound form

7. he concedes

8. he disputes whether said regulation requires such information to be on a single line

9. he concedes

10 - 16. he concedes

17. he disputes that he had acquisition records with no dispositions thereof.
18. he concedes that paragraph 18 reflects the content of the Final Notice but disputes whether any failure was willful.
19. he concedes
20. he concedes that paragraph 20 reflects the content of the Final Notice but disputes whether any failure was willful.
21. he concedes
22. he concedes that paragraph 22 reflects the content of the Final Notice but disputes whether any failure was willful
23 - 24. he concedes
25 - 26. he concedes that paragraph 25 reflects the content of the Final Notice but disputes whether any failure was willful as inferred in paragraph 26..

## B. The Administrative Hearing, 2007

27. he concedes the first sentence of paragraph 27 but disputes that the hearing officer's conclusions were set forth in the Final Notice.
28 - 41. he concedes
42 - 43. he disputes
44 - 49. he concedes
50 - 51. he disputes these paragraphs accurately reflect the meaning of the deposition testimony as set out by the Defendant.
52 - 55. he concedes
56. he disputes
57 - 58. he concedes
59 - 63. he disputes the statement as not being an accurate interpretation of what was said in the deposition.
64 - 70. he concedes.

## C. Tony Manuele's 2008 Deposition

71 - 98. he concedes
99. he disputes the inference that prior to this investigation he was aware of the requirement of his records being in bound form
100 - 114. he concedes.

## D. Lois Manuele 2008 Deposition

115 - 116. he concedes

117. he disputes the inference that the records were not in bound form when the
testimony was that they were in binders
118 - 121. he concedes.

## E. Affidavit of IOI Theresa Bolash (Ex. 4)

Plaintiff disputes those allegations contained in the Affidavit of Theresa Bolash which
a) are not factual but indicate Affiant's state of mind or opinion,
b) are reports of events that are not supported by date or time,
c) are legal conclusions ,and
d) are opinions as to the state of mind of Plaintiff.

## F. Records Provided After Deposition

Plaintiff concedes the allegations of this paragraph.

## III. APPLICABLE LAW STANDARD OF REVIEW

Plaintiff concedes the applicable standard of review as stated is correct.

## ARGUMENT

### Summary of Argument

Plaintiff agrees that the primary issue before this Court is whether his alleged violations,
when viewed in a light most favorable to him, rise to the level of "willfulness" as defined in the
applicable case law. It is Plaintiff's position that such alleged violations do not rise to the level of
"willfulness" as so defined and supports such position by reference to the decision of the hearing
officer, whose decision is attached hereto as an Exhibit, and the facts that he has complied with
requests for traces (paragraph 11 of the Affidavit of Theresa Bolash) and has cooperated with the
BATFE in correcting such alleged violations when instructed how to do so by the BATFE (page
41 of Tony Manuele's 2008 Deposition and record of Administrative Hearing at page 43).

### Argument

Defendant has relied upon the case law of various cases where the Court has defined the

term "willful" in determining whether a firearms dealer should have his or its license revoked. The controlling cases are analyzed as follows.

Stein's Inc. v. Blumenthal, 649 F.2d 463 (1980) was a case involving a license revocation against a large pawnbroker. The allegations centered around the failure of the licensee to keep proper records of firearm transactions. The Court went into length discussing the "willfulness" standard to be applied in such cases. Citing Lewin v. Blumenthal, 590 F.2d 268 (1979), it held "... The Secretary [of the Treasury] need only " prove that the petitioner knew of his legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements."." The salient feature of this case was that the pawnbroker had been investigated on several occasions before any revocation action was brought. Specifically,

May 1974 - inspection showed several violations - no revocation action initiated
July 1974 -re-inspection - despite several continuing violations, license renewal
                          recommended, licensee given copies of regulations and
                          explanation thereof given to licensee
Oct. 1975 - additional time given to complete an inventory as requested earlier
Nov. 1976 - re-inspection - recordkeeping violations discovered
Jan. 1977 - re-inspection - despite several violations, no revocation action initiated,
                          license renewal recommended
Oct. 1977 - re-inspection - continued violations, license revocation recommended, but
                          hearing officer, while finding licensee had repeated violations,
                          recommended granting renewal of license, feeling revocation
                          was too harsh a sanction.

This case is illustrative of more than one point. It indicates that recordkeeping failures in and of themselves do not necessarily support a revocation. Second, even after an agency explanation of the regulations, the licensee still continued to violate the spirit if not the letter of such regulations without revocation. Third, the hearing officer recognized the harshness of the sanction and ruled accordingly. Then as now hearing officers are limited in what they can recommend to the Director. If there is any equity in the system, it only can appear in such recommendations.

In Cucchiara v. Secretary of the Treasury, 652 F.2d 28 (1981), the petitioner had received warnings after inspection before revocation proceedings were brought. Again, specifically

1970 - petitioner received "irregularities statements" from ATF outlining violations
1972 - petitioner again received "irregularities statements" indicating hundreds of
      violations including repeated violations recordkeeping with no revocation
      charged against him
1973 - petitioner notified that any future violations might be considered willful.

With respect to this 1973 warning, the Court held

                Cucchiara clearly understood the requirements of the law,

as evidenced by the "irregularities statements" and the Bureau's
1973 warning that future violations might be considered willful.
Yet, with this knowledge, he failed to abide by these requirements.

Similarly, this case points out at least two considerations. First, revocation proceedings
were not instituted upon the first notice of violations, in fact, it could be inferred that the
petitioner had been cited 4 times before such proceedings were brought. Second, the cited
sentences seems to indicate that the Court supported its decision for revocation by finding the
petitioner had knowledge of the violations after receiving the irregularities statements from the
ATF. Thus, as in Stein's Inc v Blumenthal, supra, the Court rejected the willfulness defense of
petitioner only when violations continued after explanation of problems with the recordkeeping by
agents of the ATF. Arguably, the approach of the ATF is to give licensees a chance to correct the
deficiencies before bringing revocation proceedings ostensibly to overcome the willfulness
defense.

The case of Cisewski v. Department of the Treasury, 773 F.Supp. 148 (1991), is
particularly instructive in this regard. The fact situation was

Sept. 1986 - initial contact with petitioner by ATF agent - violations found and petitioner
    instructed of specific regulations concerning recordkeeping
Dec. 1988 - records confiscated after improper sale of handguns to undercover agents
Feb. 1989 - subsequent visit by ATF agent Holpit revealed continuing violations -
    petitioner given information to correct recordkeeping errors.

Thereafter, revocation proceedings were instituted against petitioner.
The Court felt it critical that the petitioner continued to violate the regulations and
directions of the ATF agent when it opined on page 151

The record shows that although the petitioner did make extensive
corrections in this practices, he did repeat some of these violations
subsequent to Inspector Holpit's visit and admonition that corrections
were necessary. (Emphasis added).

It then went on to say at page 152 and 153

Petitioner's claim is that the ATF singled him out for harsh treatment
and never gave him a second chance. Petitioner contends that since
there is no clear evidence of his unwillingness to change, the
regional director abused his discretion in sending a notice of
revocation instead of a letter of admonition. The testimony fails to
support petitioner's position. The fact is that Inspector Holpit
instructed the petitioner as to the proper corrective actions to take.
Even if Inspector Holpit believed at the time she instructed the
petitioner as to the proper procedures that Cisewski's license should
be revoked, her instructions to the petitioner would still be proper

and necessary, both so he could correct some or all of the existing
improprieties, and so he would comply with record-keeping
procedures in the future. (Emphasis added). Moreover, the
petitioner failed his second chance after the visit by Inspector
Neve, and he failed it after the visit by Inspector Holpit. Most
significantly, however, Congress has not provided the agency
with a host of options; this demonstrates a chary attitude in the
regulation of firearms and in providing second chances. The ATF
is essentially given only two tools of enforcement, the admonitory
letter and revocation. There are no fines, no probationary periods,
no suspensions.

Once again, the agency did not file revocation proceedings until letters of warning outlining
the violations were sent to petitioner. In that the Court realized the severity of the remedy of
revocation, it gave tacit support to the agency's standard operating procedure of giving warnings or
statements of irregularities to a licensee, ostensibly to allow the licensee to correct the violations to
avoid such revocation. Only where such licensee was given explanatory letters of deficiencies and
time to correct same and he does not should revocation proceedings be instituted.

A more recent case, Article II Gun Shop, Inc. v.Gonzales, 441 F.3d 492 (2006), adds
support to the argument that warning letters should be sent before revocation proceedings are
begun. There the background of inspections was

> 1981 - initial inspection - record-keeping violations found but no revocation action
> filed
>
> 1998 - inspection revealed ongoing violations - inspector discussed corrective
> measures with licensee but no revocation action filed
>
> May 2000 - inspection revealed ongoing violations - inspector warned licensee that
> ATF was contemplating revocation, but gave licensee opportunity to
> present his case in a conference with the ATF. At the conference,
> licensee agreed to correct deficiencies
>
> July 2000 - inspection revealed failure of licensee to correct deficiencies - notice of
> revocation issued.

Speaking to the willfulness requirement for revocation to lie, the Court, referring to the
licensee, opined at page 498

> ... he was obviously aware of the Act's requirements after being cited for
> numerous violations in the past." (Emphasis added.)
>
> Even after Gun World was warned in 2000 that its license could be revoked
> based on its violations, Gun World continued to violate the Act.

Citing Breit & Johnson Sporting Goods, Inc.v. Ashcroft, 320 F. Supp.2d 671 (2004), the
Court seemed to equate warnings by inspectors, who explain the regulations to a licensee, with
willfulness if such licensee continues to violate such regulations thereafter. In that case it said

> ... firearms dealer's repeated violations of the Gun Control Act's
> recordkeeping requirements, even after two ATF warning conferences,
> sufficient to establish "willfulness".

Bringing this analysis to the case at bar, it is apparent that the hearing officer relied on same in his ruling set out in full in the attached Exhibit "A". The licensee's operation was inspected in January 2006. No warning letters were sent to him and the next activity was the receipt of a Notice of Revocation. After hearing before a hearing officer where testimony and other evidence was elicited, his recommendation was to withdraw the Notice of Revocation. He apparently applied the above analysis to all eight counts in the Notice and found that every violation was not willful. Quoting in part from the recommendation,

Count One - (failure to record acquisitions)

> ... The fact is this licensee has had his license for 15 years and has never been
> inspected until January 2006. There was no evidence presented that ATF ever
> explained the basic requirements of the firearms laws and regulations to the
> licensee.
> ... The government proved that the licensee was not timely recording the
> dispositions of firearms in the required A & D record. However, the
> government did not prove that the licensee purposefully disregarded or was
> plainly indifferent to the recording requirements. The government did not
> provide evidence or testimony why the licensee failed to timely record
> dispositions in his A & D record.
> ... This licensee has had his federal firearms license for 15 years and has never
> been inspected or had a face to face inspection by ATF. Therefore, I find that
> the government proved the violation, but not that it was willful.

Count Two -(failure to record dispositions)

> ...The fact is this licensee has had his license for 15 years and has never been
> inspected until January 2006. There was no evidence presented that ATF ever
> explained the basic requirements of the firearms laws and regulations to the
> licensee.
> ... The government proved that the licensee was not timely recording the
> acquisition of firearms in the required A & D record. However, the
> government did not prove that the licensee purposefully disregarded or was
> plainly indifferent to the recordkeeping requirements. The government did not
> provide evidence or testimony why the licensee failed to timely record
> acquisitions in his A & D record.
> ... This licensee has had his federal firearms license for 15 years and has never
> been inspected or had a face to face inspection by ATF. Therefore, I find that
> the government proved the violation, but not that it was willful.

Count Three - (failure to keep records in bound fashion)

> ... The fact is this licensee has had his license for 15 years and has never been

inspected until January 2006. There was no evidence presented that ATF ever explained the basic requirements of the firearms laws and regulations to the licensee.

... The government did not provide any evidence that; one the licensee received a letter inviting him to the firearms seminar; two that the licensee attended the seminar and during cross examination, Investigator Bolash admitted it was an assumption on her part.

... This licensee has had his federal firearms license for 15 years and has never been inspected or had a face to face inspection by ATF. Therefore, I find that the government proved the violation, but not that it was willful.

Count Four -(failure to record addresses or license numbers)

... The fact is this licensee has had his license for 15 years and has never been inspected until January 2006. There was no evidence presented that ATF ever explained the basic requirements of the firearms laws and regulations to the licensee.

... This licensee has had his federal firearms license for 15 years and has never been inspected or had a face to face inspection by ATF. Therefore, I find that the government proved the violation, but not that it was willful.

Count Five - (failure to report multiple sales)

...The fact is this licensee has had his license for 15 years and has never been inspected until January 2006. There was no evidence presented that ATF ever explained the basic requirements of the firearms laws and regulations to the licensee. This licensee has had his federal firearms license for 15 years and has never been inspected or had a face to face inspection by ATF. Therefore, I find that the government proved the violation, but not that it was willful.

Count Six - (failure to maintain records in order)

... The fact is this licensee has had his license for 15 years and has never been inspected until January 2006. There was no evidence presented that ATF ever explained the basic requirements of the firearms laws and regulations to the licensee. This licensee has had his federal firearms license for 15 years and has never been inspected or had a face to face inspection by ATF. Therefore, I find that the government proved the violation, but not that it was willful.

Count Seven - (failure to answer prohibiting questions)

... The fact is this licensee has had his license for 15 years and has never been inspected until January 2006. There was no evidence presented that ATF ever explained the basic requirements of the firearms laws and regulations to the licensee. This licensee has had his federal firearms license for 15 years and has never been inspected or had a face to face inspection by ATF. Therefore, I find that the government proved the violation, but not that it was

willful.

Count Eight - (failure to record type of identification)

> ... The fact is this licensee has had his license for 15 years and has never been inspected until January 2006. There was no evidence presented that ATF ever explained the basic requirements of the firearms laws and regulations to the licensee. This licensee has had his federal firearms license for 15 years and has never been inspected or had a face to face inspection by ATF. Therefore, I find that the government proved the violation, but not that it was willful.

The hearing officer was in the best position to evaluate the credibility of the witnesses, specifically including Mr. Manuele, and made a finding, after receiving testimony and other evidence, that the actions of the licensee were not made with purposeful disregard of or in plain indifference to the recordkeeping requirements of the ATF. Proof of technical violations of the regulations do not necessarily prove the required element of willfulness. It was the burden of the agency to provide by factual evidence not only the technical violations of the Act, but also the state of mind of the licensee as he carried out his recordkeeping. As revealed in the case law the licensee would have to have been aware of a specific regulation before it could be presumed that he willfully disregarded it and the formal way to show this would be to prove that

a) the agency inspector or other agency personnel gave him a detailed explanation of specific regulations being violated, and

b) after a period of time, the licensee still was violating such specific regulations. In the present case, no such time to correct violations was given before the Notice of Revocation was issued to him. The hearing officer recognized this and recommended withdrawal of the notice of revocation accordingly. He found that for a period of 15 years the licensee had attempted to abide by the rules as he knew them to be, without any direction or guidance from the ATF at any time during said 15 years. Even the original and amended applications were done by mail or telephone, with no personal conferences or seminars required between the parties.

Upon review of the hearing officer's recommendation, the Acting Director ruled that the licensee acted willfully in regard to four of the eight counts without stating the basis for such determination or explaining why the recommendation of the hearing officer was upheld in certain cases and not others. Such ruling, without defining the reasons therefor, was arbitrary at best and an abuse of due process at worst. Attached hereto as Exhibit"B" is the Final Notice of the Acting Director of the ATF).

The Defendant's Motion for Summary Judgment is necessarily based on the argument that there is no substantial question of law or fact, given that the facts viewed most favorably to Plaintiff. The above argument illustrates there is not only inter-agency conflict of whether Plaintiff's actions factually constituted willful violations but also given the case law governing these situations, whether, without prior notification of recording deficiencies by the agency or a showing

of a licensee being instructed in the correct manner to keep records, a licensee can be held to a standard of willfulness for violating agency regulations. Defendant's motion should be denied.

Respectfully submitted,

Tony Manuele, Jr. d/b/a Tony's Sporting Goods

By: /s/ Michael J. Logan
His Attorney

Michael J. Logan
Michael J. Logan, Ltd.
837 S. Fourth Street
Springfield, IL 62703
Tel: 217-522-8880
Fax: 217-4522-8887

## PROOF OF SERVICE

The undersigned, being duly sworn on oath, states that she served the enclosed pleadings by placing a copy of same in a U.S. Post Office mailbox, postage prepaid, in a sealed envelope on the **7th** day of April, 2008, addressed to the person(s) of record as follows:

**U.S. Attorney's Office**
**ATTN: James Lewis**
**318 S. Sixth Street**
**Springfield, IL 62701-1806**

*/s/ Nicole A. Lawson*

**Nicole A. Lawson**
**Paralegal**

**Michael J. Logan, Ltd.**
**Michael J. Logan**
**837 S. Fourth Street**
**Springfield, IL 62703**
**217-522-8880**
**217-522-8887 Facsimile**

**E-FILED**
Monday, 07 April, 2008  04:26:02 PM
Clerk, U.S. District Court, ILCD



U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Charlotte Field Division*

Charlotte, NC    28226
www.atf.gov
**February 12, 2007**

**MEMORANDUM TO:**    **Director, Industry Operations**
**Chicago Field Division**

**FROM:**    **Gary L. Schuster**
**Hearing Officer, Charlotte Field Division**

**SUBJECT:**    **Report and Recommendation Concerning**
**Notice of Revocation of License**
**Tony Manuele Jr.**
**Dba: Tony's Sporting Goods**
**7922 Wildlife Road**
**Chatham, IL 62629**
**FFL number: 3-37-167-01-6D-33941**

## INTRODUCTION

An informal hearing was held on January 30, 2007 from approximately 10:15 am until12:41 pm at the ATF Springfield Field Office, 3161 West White Oaks Drive, Suite 200, Springfield, IL regarding the Notice of Revocation of License, ATF Form 4500 (5300.4), issued to Tony Manuele Jr., dba: Tony's Sporting Goods. The hearing was held under the provisions of Section 923(f)(2) of Title 18 United States Code and Section 478.74, Title 27 Code of Federal Regulations. I, Gary L. Schuster, presided as Hearing Officer.

## APPEARING FOR THE GOVERNMENT

Erika Ritt, ATF Counsel for the Chicago Field Division represented the Government. Also testifying for the government was Theresa Bolash, ATF Investigator, Springfield Field Division.

## APPEARING FOR THE LICENSEE

Tony Manuele, Jr., Owner was present.  Michael J. Logan, Attorney at Law was also present and represented the licensee.

-2-

## BACKGROUND

On July 26, 2006, the Director, Industry Operations, Chicago Field Division, issued a Notice of Revocation of License, ATF Form 4500 (5300.4), to Tony Manuele, Jr., dba: Tony's Sporting Goods, as a Type 01, License, as a dealer in firearms other than destructive devices (Government Exhibit B ). The basis for the proposed revocation of his license was based on the fact that the licensee willfully committed numerous violations of the Federal firearms laws and regulations in the following instances: Licensee failed to timely record the disposition of 611 firearms in his acquisition and disposition records; licensee failed to timely record the acquisition of 502 firearms in his acquisition and disposition records; licensee failed to maintain an acquisition and disposition record in a bound fashion as required by the regulations; licensee failed to record the address and/or federal firearms license number from any and all individuals from whom licensee acquired firearms from in his A & D records; on 40 occasions, licensee failed to report to ATF on ATF Form 3310.4, Report of Multiple Sale or other Dispositions of Pistols and Revolvers, of the sale or other disposition of two or more pistols or revolvers to non-licensees during any five consecutive business days; licensee failed to maintain ATF Forms 4473, Firearms Transaction Records, in alphabetical, chronological or numerical order as required by the regulations; on 11 occasions, licensee transferred firearms to non-licensees who failed to answer all the prohibiting questions on ATF Forms 4473; on four occasions, licensee failed to record the type of identification used by the purchaser on ATF Forms 4473. The licensee requested a hearing in writing (Government Exhibit C & D). A hearing date of October 24; 2006 was set and the licensee was so notified (Hearing Officer Exhibit #2). On October 23, 2006 the licensee's attorney requested a postponement of the firearms hearing scheduled for October 24, 2006. A new hearing date was set for January 30, 2007 and the licensee and his attorney were so notified (Government Exhibit D-1). Gary L. Schuster was appointed as hearing officer (Hearing Officer Exhibit #1).

## GOVERNMENT PRESENTATION

The Government presented the following information related to the specific counts stated in the ATF Form 4500, Notice of Revocation of License:

**Count one – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.125(e):** Licensee failed to timely record the disposition of 611 firearms in his acquisition and disposition records.

Investigator Bolash testified that she tried to begin her inspection in October 2005 at the licensee's storefront premises, but the licensee was in the process of moving his business to his residence. She testified that she was able to begin her inspection at the licensee's residence in January 2006. She further testified that Mr. Manuele, Jr. became ill during her inspection and was unavailable to complete her inspection. She testified that she was referred to the licensee's attorney Michael Logan. Investigator Bolash testified that it took numerous contacts with the

-3-

licensee and Michael Logan to obtain an approved Power of Attorney for Mr. Logan. She testified that she did not complete her inspection because she did not receive Mr. Logan's approved power of attorney form until after the notice of revocation was mailed out (Government Exhibits A, A-1, A-2, A-3 and A-4). Investigator Bolash testified that, for the period 1991 through 1996, the licensee was maintaining his A & D records on computer. She further testified that the licensee did not have an approval to maintain his A & D records by computer. She further testified that, for the period 1996 through 2006, the licensee was maintaining a manual A & D record. She testified that the licensee had recorded the acquisitions of 611 firearms but there were no recorded dispositions of these 611 firearms in the licensee's A & D records. Investigator Bolash testified that government exhibit "G" is a list of firearms acquired and recorded in the licensee's A & D record for years 1997-2000, 2002, 2005 and 2006 (Government Exhibit G). She explained that government exhibit "F" is a list of 312 firearms in government exhibit "G" that does not have a disposition recorded in the A & D record nor is the firearm in inventory (Government Exhibit "F"). She explained that government exhibit "E" is a copy of the physical inventory of firearms on hand in January 2006 (Government Exhibit E). She further testified that the remaining 299 firearms are acquisitions in 2001, 2003 and 2004 that have no dispositions recorded and was not in the physical inventory in January 2006. She further explained that a total of 611 firearms were acquired by the licensee and recorded in his A & D records, but were not in the physical inventory on January 2006. Investigator Bolash testified that the licensee was aware of the requirements to record the acquisitions and dispositions of firearms because he had correctly recorded them in other instances and this is a basic requirement that all firearms dealers should know. She also testified that the licensee visited the ATF booth at the Las Vegas shot show and inquired on how to change locations of his business premises (Government Exhibit H-1). She further testified that an amended application inspection was conducted on Tony Manuele, Jr when he filed an amended application to move from his storefront premises to his residence premises. Investigator Bolash testified that the amended application was conducted by telephone. Investigator Bolash testified that she reviewed the violations with Mr. Logan and explained to him what needed to be done to correct the violations (Government exhibit H).

**Count two – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.125(e):** Licensee failed to timely record the acquisition of 502 firearms in his acquisition and disposition records.

Investigator Bolash testified that the licensee failed to record the acquisition of 502 firearms in his A & D record. She testified that a review of government exhibit "G" disclosed that 486 firearms were recorded as disposition in the A & D record, but there was no corresponding entry for the acquisition of these 486 firearms. She further explained that there were 16 firearms in inventory that were not recorded as acquisitions in the licensee's A & D record (Government Exhibit E). She further testified that she recorded the 502 firearms that were not recorded as acquisitions in the licensee's A & D in government exhibit "I". She testified that this is a willful violation because it is a basic requirement of being a federal firearms dealer to record the acquisition and dispositions of firearms in an A & D record. She

-4-

further explained that Mr. Manuele had previously recorded acquisitions and disposition of firearms in his A & D record (Government Exhibit G).

**Count three – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.125(e):** Licensee failed to maintain an acquisition and disposition record in a bound fashion as required by the regulations.

Investigator Bolash testified that the licensee prepared his own format for the A & D record, but failed to maintain the record in a bound book. She testified that the A & D records were loose pages and she was not sure that all pages were accounted for. She testified that this is a basic requirement of being a federal firearms dealer to maintain an A & D in a bound book. She further testified that ATF occasionally conducts firearms seminars to discuss the laws and regulations. She further testified that there was a firearms seminar two years in Peoria, IL and that the licensee would have been invited to attend. She stated that the licensing center would have sent out letters inviting dealers to the seminar.

During cross examination by Michael Logan, Investigator Bolash stated that she assumed that Mr. Manuele would have been invited to the seminar. She further testified that she did not see a mailing list of those firearm dealers that were mailed an invitation to the seminar.

**Count four – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.125(e):** Licensee failed to record the address and/or federal firearms license number from any and all individuals from whom licensee acquired firearms from in his A & D records.

Investigator Bolash testified that the licensee's A & D record contained a column for acquisitions but the format did not contain the address of the person from whom the firearm was received from or if received from federal firearms licensee, the firearms license number of the dealer from whom he received the firearm. She further testified that the licensee's A & D record did not contain the address of the person to whom a firearm was transferred in the disposition portion of his A & D record (Government exhibit G). She further testified that the disposition section of the A & D record contained the name of the individual who purchased the firearm and under the column FFL or 4473, the licensee recorded 4473. She testified that this is a willful violation because it is a basic requirement of keeping an A & D record that the name and address is to be recorded and there is an example in the regulations what the format should look like.

**Count five – 18 U.S.C. § 923(g)(3) and 27 C.F.R 478.126(a):** On 40 occasions, licensee failed to report to ATF on ATF Form 3310.4, Report of Multiple Sale or other Dispositions of Pistols and Revolvers, of the sale or other disposition of two or more pistols or revolvers to non-licensees during any five consecutive business days.

Investigator Bolash testified that, for the period of January 2003 through January 2006, that on 40 occasions the licensee failed to report the sale or transfer of two or more pistols or revolvers to non-licensees during any five consecutive business days to ATF. She testified that a review of ATF Forms 4473, Firearms Transaction Records, and the licensee A & D record

-5-

disclosed that the licensee failed to report the sale of multiple handguns on ATF F 3310.4 (Government Exhibit J). She further testified that she ran a firearms trace history for the period of January 1991 through January 2006, for the licensee and none of these 40 multiple sales of handguns were reported to ATF (Government Exhibit K). Investigator Bolash testified that she discussed this violation with Mr. Logan and advised him to report these firearm transactions on ATF Form 3310.4, Multiple Sale form. She further testified that she ran another firearms trace history, for the period January 2004 through January 26, 2007 for the licensee and none of these 40 multiple sales have been reported as requested (Government Exhibit K-1). Investigator Bolash testified that she requested all multiple sale forms at the beginning of her inspection from Mr. Manuele. She further testified that he had provide some multiple sale forms, but could not recall how many. Investigator Bolash testified that this was a willful violation because the licensee had reported multiple sales and stopped reporting them in 2003. She testified that Mr. Manuele stated that he knew he was supposed to report the sale of multiple handguns to ATF. Ms. Ritt testified that during the period 1999 through 2003, the licensee reported 18 multiple sale transactions to ATF.

**Count six – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.124(b):** Licensee failed to maintain ATF Forms 4473, Firearms Transaction Records, in alphabetical, chronological or numerical order as required by the regulations.

Investigator Bolash testified that ATF Forms 4473, Firearms Transaction Records, are to be maintained in alphabetical, chronological or numerical order. She further testified that the licensee was not maintaining the forms in any type of order. She testified that Mr. Manuele said that he use to keep them in a binder, but they would fall out. She further testified that Mr. Manuele stated that he had gotten behind in his filing and that is the reason why they were not in a binder.

**Count seven – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.124(c)(1):** On 11 occasions, licensee transferred firearms to non-licensees who failed to answer all the prohibiting questions on ATF Forms 4473.

Investigator Bolash testified that a review of 1,200 ATF Forms 4473, Firearms Transaction Records, disclosed that on 11 ATF Forms 4473, the non-licensees failed to answer question 12l (4473 – 2001 Edition) on seven occasions, are you non-immigrant alien; failed to answer 12a (4473-2001 Edition) on two occasions, are you the actual buyer of the firearm; failed to answer 11d (4473 – July 2005 Edition) on one occasion, are you a fugitive from justice; failed to answer 11l (4473 – July 2005 Edition) on one occasion, are you nonimmigrant alien and incorrectly answered 11b & c (4473 – July 2005 Edition) by placing in x in those blocks; are you under indictment or information in any court for a felony or any other crime; have you ever been convicted in any court of a felony or any other crime (Government Exhibit L). She testified that these were willful violation because of the 1,200 ATF Forms 4473 only these 11 forms had omissions, therefore, he knew how to complete these forms.

-6-

**Count eight – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.124(c)(3)(i):** On four occasions, licensee failed to record the type of identification used by the purchaser on ATF Forms 4473.

Investigator Bolash testified that a review of 1,200 ATF Forms 4473, Firearms Transaction Records, disclosed that four ATF Forms the licensee failed to record the type of identification in section b, item 18a on three occasions and failed to complete section b, item 18a, the number of the identification used by the non-licensee on one occasion (Government Exhibit M). She further testified that this was a willful violation because the licensee had properly recorded the identification on the other 1,200 ATF Forms 4473 that she reviewed.

## LICENSEE PRESENTATION

David Crump presented the following information related to the specific violations stated in the Notice of Revocation of License, ATF Form 4500 (5300.4):

**Count one – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.125(e):** Licensee failed to timely record the disposition of 611 firearms in his acquisition and disposition records.

Tony Manuele, Jr. testified that he was recording acquisitions in an A & D record, as well as the dispositions in the A & D record. He testified that he was recording the firearms he received in a record in chronological order. He further testified that he would then record the disposition of a firearm on another page in chronological order. He further testified that he did not realize at the time that he had to record the disposition of the firearm in the A &D record that corresponded with the acquisition of the firearm. He testified that he had never been inspected and that he received his firearms license in 1991 and the application inspection was conducted by telephone.

**Count two – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.125(e):** Licensee failed to timely record the acquisition of 502 firearms in his acquisition and disposition records.

Mr. Manuele testified that he tried to do the best he could in recording the acquisition and disposition of firearms.

During cross examination by Mrs. Ritt, Mr. Manuele admitted that he knew he was suppose to record all acquisitions and dispositions in his A & D record. He further admitted that he knew it was very important to record the acquisition of firearms than the disposition of firearms because he had ATF Forms 4473 to show who purchased the firearms.

**Count three – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.125(e):** Licensee failed to maintain an acquisition and disposition record in a bound fashion as required by the regulations.

-7-

Mr. Logan testified that Mr. Manuele did not receive any training on how to maintain an A & D record. There were no other comments concerning the bound record.

**Count four – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.125(e):** Licensee failed to record the address and/or federal firearms license number from any and all individuals from whom licensee acquired firearms from in his A & D records.

Mr. Manuele, Jr. did not have an explanation for this violation. He did state that he had a book with a copy of all the firearm dealers' licenses that he purchases firearms from.

**Count five – 18 U.S.C. § 923(g)(3) and 27 C.F.R 478.126(a):** On 40 occasions, licensee failed to report to ATF on ATF Form 3310.4, Report of Multiple Sale or other Dispositions of Pistols and Revolvers, of the sale or other disposition of two or more pistols or revolvers to non-licensees during any five consecutive business days.

Mr. Manuele, Jr testified that ATF did not receive the multiple sale forms. When questioned by Mr. Logan, Mr. Manuele stated that he probably have these forms at home. Mr. Manuele further testified that he had a bunch of these forms at home and brought some with him to the hearing. He further explained that he didn't know if any of the forms he brought to the hearing were for the 40 missing multiple sales that ATF was missing. Mr. Manuele further testified that there is a possibility that some of the forms were overlooked or not sent or for whatever reason.

**Count six – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.124(b):** Licensee failed to maintain ATF Forms 4473, Firearms Transaction Records, in alphabetical, chronological or numerical order as required by the regulations.

Messrs. Logan and Manuele, Jr had no comments on this violation.

**Count seven – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.124(c)(1):** On 11 occasions, licensee transferred firearms to non-licensees who failed to answer all the prohibiting questions on ATF Forms 4473.

Mr. Manuele testified that the eight ATF Forms 4473 where the non-licensees failed to answer the non-immigrant alien question was an oversight on his part. He testified that he has no explanation for ATF Form 4473, where the non-licensee placed in "x" in question 11b & c. He testified that he scans the forms to ensure that all the blocks are completed and just missed those.

**Count eight – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.124(c)(3)(i):** On four occasions, licensee failed to record the type of identification used by the purchaser on ATF Forms 4473.

-8-

Mr. Manuele testified that it was an oversight on his part why question 18a was left blank. There was no other explanation for this violation.

## FINDINGS OF FACT

**Count one – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.125(e):** Licensee failed to timely record the disposition of 611 firearms in his acquisition and disposition records.

The Government presented testimony and evidence that the licensee failed to timely record the disposition of 611 firearms in his A & D records (Government Exhibits E, F, and G). The licensee presented testimony that he was recording the acquisitions and dispositions in an A & D record, however he did not realize at the time that he had to record the disposition of the firearm in the A & D record that corresponded with the acquisition entry in the A & D record. The licensee presented testimony that he received his firearms license in 1991 and that the application inspection was conducted by telephone. The licensee also presented testimony that he had never been inspected by ATF until January 2006. Investigator Bolash presented testimony that this violation was willful because it is a basic requirement of being a federal firearms dealer to know the laws and regulations on how to maintain an A & D record. She further testified that Mr. Manuele had visited the ATF booth at the Las Vegas shot show and asked questions on how to move his licensed premises (Government Exhibit H-1). She presented testimony that she assumed that the licensee was invited to an ATF sponsored firearms seminar in Peoria, IL two years ago. However, during cross examination Investigator Bolash admitted that she had no knowledge or evidence to substantiate her assumption. The government presented evidence that the licensee asked questions of ATF at the Las Vegas shot show to prove the licensee knew how to contact ATF if he had any questions. The fact is the licensee received his federal firearms license in 1991 and the application inspection was conducted over the telephone and when he submitted an amended application to move his licensed premise from a storefront operation to his residence in 2005, that amended application inspection was conducted by telephone. The fact is this licensee has had his license for 15 years and has never been inspected until January 2006. There was no evidence presented that ATF ever explained the basic requirements of the firearms laws and regulations to the licensee. The licensee prepared his own format for the required A & D record to the best of his knowledge. The licensee did admit that he knew he was supposed to record the dispositions of firearms in an A & D record and had done so. The government must establish that a licensee knew of its legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements. The licensee admitted that he knew his legal obligation to record the dispositions in his A & D record, and was doing so the best way he knew how. The government proved that the licensee was not timely recording the dispositions of firearms in the required A & D record. However, the government did not prove that the licensee purposefully disregarded or was plainly indifferent to the recordkeeping requirements. The government did not provide evidence or testimony why the licensee failed to timely record dispositions in his A & D record. Investigator Bolash testified that the licensee's A &D record was loose pages and she was not sure that all the pages were accounted for. The licensee had been recording dispositions, but in the back of his

-9-

A & D record in chronological order. This licensee has had his federal firearms license for 15 years and has never been inspected or had a face to face inspection by ATF. Therefore, I find that the government proved the violation, but not that it was willful.

**Count two – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.125(e):** Licensee failed to timely record the acquisition of 502 firearms in his acquisition and disposition records.

The Government presented testimony and evidence that the licensee failed to timely record the acquisitions of 502 firearms in his A & D record (Government Exhibit E, G and I). The licensee presented testimony that he did the best he could. Investigator Bolash presented testimony that this was a willful violation because this is a basic requirement of being a federal firearms dealer to know the laws and regulations on how to maintain an A & D record. The fact is the licensee received his federal firearms license in 1991 and the application inspection was conducted over the telephone and when he submitted an amended application to move his licensed premise from a storefront operation to his residence in 2005, that amended application inspection was conducted by telephone. The fact is this licensee has had his license for 15 years and has never been inspected until January 2006. There was no evidence presented that ATF ever explained the basic requirements of the firearms laws and regulations to the licensee. The government must establish that a licensee knew of its legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements. The licensee admitted that he knew his legal obligation to record the acquisitions in his A & D record, and was doing so the best way he knew how. The government proved that the licensee was not timely recording the acquisitions of firearms in the required A & D record. However, the government did not prove that the licensee purposefully disregarded or was plainly indifferent to the recordkeeping requirements. The government did not provide evidence or testimony why the licensee failed to timely record acquisitions in his A & D record. Investigator Bolash testified that the licensee's A &D record was loose pages and she was not sure that all the pages were accounted for. The licensee had been recording acquisitions in chronological order. This licensee has had his federal firearms license for 15 years and has never been inspected or had a face to face inspection by ATF. Therefore, I find that the government proved the violation, but not that it was willful.

**Count three – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.125(e):** Licensee failed to maintain an acquisition and disposition record in a bound fashion as required by the regulations.

The Government presented testimony that the licensee was not maintaining his A & D record in a bound book as required by the regulations. The government presented testimony that the licensee's A & D records were loose pages and that they were not sure that all the pages were accounted for. Mr. Logan testified that Mr. Manuele did not receive any training on how to maintain an A & D record. There were no other comments concerning the bound record. Investigator Bolash presented testimony that this violation was willful because it is a basic

000047

-10-

requirement of being a federal firearms dealer to know the laws and regulations on how to maintain an A & D record in a bound book. The fact is the licensee received his federal firearms license in 1991 and the application inspection was conducted over the telephone and til



-11-

Count five – 18 U.S.C. § 923(g)(3) and 27 C.F.R 478.126(a):  On 40 occasions, licensee failed to report to ATF on ATF Form 3310.4, Report of Multiple Sale or other Dispositions of Pistols and Revolvers, of the sale or other disposition of two or more pistols or revolvers to non-licensees during any five consecutive business days.

The government presented testimony and evidence that the licensee failed to report on 40 occasions the sale or other disposition of two or more handguns to non-licensees during any five consecutive business days on ATF F 3310.4 to ATF (Government Exhibit J, K and K-1). Investigator Bolash presented testimony that this was a willful violation because the licensee had reported multiple sales and stopped reporting them in 2003. She testified that Mr. Manuele stated that he knew he was supposed to report the sale of multiple handguns to ATF. Ms. Ritt presented testimony that during the period 1999 through 2003, the licensee reported 18 multiple sale transactions to ATF. The licensee presented testimony that ATF did not receive all the multiple sales forms. The licensee presented testimony that there is a possibility that some of the multiple sale forms were overlooked or not sent. The government must establish that a licensee knew of its legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements. The fact is the licensee received his federal firearms license in 1991 and the application inspection was conducted over the telephone and when he submitted an amended application to move his licensed premise from a storefront operation to his residence in 2005, that amended application inspection was conducted by telephone. The fact is this licensee has had his license for 15 years and has never been inspected until January 2006. There was no evidence presented that ATF ever explained the basic requirements of the firearms laws and regulations to the licensee. This licensee has had his federal firearms license for 15 years and has never been inspected or had a face to face inspection by ATF. Therefore, I find that the government proved the violation, but not that it was willful

Count six – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.124(b):  Licensee failed to maintain ATF Forms 4473, Firearms Transaction Records, in alphabetical, chronological or numerical order as required by the regulations.

The government presented testimony that the licensee was not maintaining ATF Forms 4473, Firearms Transaction Records, in alphabetical, chronological or numerical order as required by the regulations. The licensee had no comment on this violation. The government must establish that a licensee knew of its legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements. The fact is the licensee received his federal firearms license in 1991 and the application inspection was conducted over the telephone and when he submitted an amended application to move his licensed premise from a storefront operation to his residence in 2005, that amended application inspection was conducted by telephone. The fact is this licensee has had his license for 15 years and has never been inspected until January 2006. There was no evidence presented that ATF ever explained the basic requirements of the firearms laws and regulations to the licensee. This licensee has had his federal firearms license for 15 years and has never been inspected or had a face to face

-12-

inspection by ATF. Therefore, I find that the government proved the violation, but not that it was willful

**Count seven – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.124(c)(1):** On 11 occasions, licensee transferred firearms to non-licensees who failed to answer all the prohibiting questions on ATF Forms 4473.

The government presented testimony and evidence that the licensee transferred firearms to non-licensees on 11 occasions who failed to answer all the prohibiting questions on ATF Forms 4473, Firearms Transaction Records (Government Exhibit L). Investigator Bolash presented testimony that these were willful violation because of the 1,200 ATF Forms 4473 only these 11 forms had omissions; therefore, he knew how to complete these forms. The licensee presented testimony that these omissions were an oversight on his part and that he only scans the forms to make sure that all sections were completed. The government must establish that a licensee knew of its legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements. The fact is the licensee received his federal firearms license in 1991 and the application inspection was conducted over the telephone and when he submitted an amended application to move his licensed premise from a storefront operation to his residence in 2005, that amended application inspection was conducted by telephone. The fact is this licensee has had his license for 15 years and has never been inspected until January 2006. There was no evidence presented that ATF ever explained the basic requirements of the firearms laws and regulations to the licensee. This licensee has had his federal firearms license for 15 years and has never been inspected or had a face to face inspection by ATF. Therefore, I find that the government proved the violation, but not that it was willful

**Count eight – 18 U.S.C. § 923(g)(1)(a) and 27 C.F.R. 478.124(c)(3)(i):** On four occasions, licensee failed to record the type of identification used by the purchaser on ATF Forms 4473.

The government presented testimony and evidence that the licensee failed to record the type of identification on four occasions on ATF Forms 4473 of the 1,200 forms reviewed (Government Exhibit M). Investigator Bolash presented testimony that this was a willful violation because the licensee had properly recorded the identification on the other 1,200 ATF Forms 4473 that she reviewed. The government must establish that a licensee knew of its legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements. The fact is the licensee received his federal firearms license in 1991 and the application inspection was conducted over the telephone and when he submitted an amended application to move his licensed premise from a storefront operation to his residence in 2005, that amended application inspection was conducted by telephone. The fact is this licensee has had his license for 15 years and has never been inspected until January 2006. There was no evidence presented that ATF ever explained the basic requirements of the firearms laws and regulations to the licensee. This licensee has had his federal firearms license for 15 years and has

-13-

never been inspected or had a face to face inspection by ATF. Therefore, I find that the government proved the violation, but not that it was willful

## CONCLUSION

Under 18 U.S.C. § 923(e), the Bureau of Alcohol, Tobacco, Firearms and Explosives may revoke a Federal firearms license if the licensee willfully violates any provision of Chapter 44, Title 18, United States Code (the Gun Control Act, as amended,) or any rule or regulation thereunder.

The findings of fact as stated above that the licensee, Tony Manuele, Jr., dba: Tony's Sporting Goods, federal firearms license number 3-37-167-01-6D-33941, did not willfully violate the provisions of **18 U.S.C. §923(g)(1)(a), §923(g)(3) and 27 C.F.R. §478.125(e), §478.126(a), §478.124(b), §478.124(c)(1), and §478.124(c)(3)(i).** Therefore, the Notice of Revocation of this Federal Firearms License should be withdrawn.

## RECOMMENDATION

Upon consideration of all the evidence, including testimony and documents presented by both parties, and the arguments of both parties at the hearing, I recommend that the Notice of Revocation of this Federal Firearms License should be withdrawn.

Gary L. Schuster

Gary L. Schuster
Hearing Officer

Attachments:
List of Exhibits
Tapes of Hearing (2)

-14-

## LIST OF EXHIBITS

### Government Exhibits:

| | |
|---|---|
| Government Exhibit – A | Power of Attorney – Michael Logan |
| Government Exhibit – A-1 | Letter to Anthony Manuele, Jr. dated 3/2/06 |
| Government Exhibit – A-2 | Limited Power of Attorney for Michael Logan |
| Government Exhibit – A-3 | Letter to Anthony Manuele, Jr, dated 3/23/06. |
| Government Exhibit – A-4 | Copy of returned certified letter sent to Tony Manuele |
| Government Exhibit – B | Notice of Revocation of License. |
| Government Exhibit – C | Request for a Firearms Hearing from Tony Manuele, Jr.. |
| Government Exhibit - D | Copy of certified mail receipt for Tony Manuele, Jr. |
| Government Exhibit – D-1 | Notice of Hearing on January 30, 2007. |
| Government Exhibit – E | Physical Inventory of firearms. |
| Government Exhibit – F | List of 312 Open Dispositions in A & D record. |
| Government Exhibit – G | Copy of licensees A & D record. |
| Government Exhibit – H | Report of Violations note dated or signed. |
| Government Exhibit – H-1 | Letter from Tony Manuele, Jr to ATF dated 3/6/00. |
| Government Exhibit - I | List of firearms not entered as receipts in A & D record. |
| Government Exhibit – J | Copy of ATF Forms 4473, A&D record, worksheet #2. |
| Government Exhibit – K | Trace report for period 1/91 to 1/31/06 |
| Government Exhibit – K-1 | Trace report for period 1/26/04 to 1/26/07. |
| Government Exhibit – L | Copy of ATF Forms 4473. |
| Government Exhibit – M | Copy of ATF Forms 4473. |
| Government Exhibit – X | List of completion codes for firearms traces |

### Licensee Exhibits:

| | |
|---|---|
| Licensee Exhibit – 1 | Letter to Mark Geever, ATF |
| Licensee Exhibit – 2 | Letter to Ardith, trace request. |

### Hearing Officer Exhibits:

| | |
|---|---|
| Hearing Officer Exhibit –1 | Hearing Officer Deignation |
| Hearing Officer Exhibit – 2 | Letter Notifying Licensee of Hearing Date 10/24/06 |

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Final Notice of Denial of Application or
Revocation of Firearms License**

In the matter of:

☐ The application for license as _____ , filed by; or

☑ License Number _3-37-167-01-6D-33941_ , as _Tony Manuel Jr._

_____ , issued to:

Name and Address of Applicant or Licensee *(Show number, street, city, state and ZIP Code)*

> Tony Manuele Jr.
> d/b/a Tony's Sporting Goods
> 7922 Wildlife Road
> Chatham, IL 62629

Notice Is Hereby Given That:

☑ (1) After due consideration following a hearing held pursuant to section 923(f)(2) of Title 18, U.S.C., and on the basis of findings set out in the attached copy of the findings and conclusions, your

☐ application for license described above is denied.

☑ license described above is revoked, effective _April 13, 2007_ .

If you are dissatisfied with this action you may, within 60 days after receipt of this notice, file a petition pursuant to section 923(f)(3) of Title 18, U.S.C., for judicial review with the U.S. District Court for the district in which you reside or have your principal place of business.

☐ (2) Since a request for hearing pursuant to section 923(f)(2) of Title 18, U.S.C., was not received, or was not timely received, and based on the findings set out in the attached copy of findings and conclusions, your license described above is revoked effective _____ .

☐ (3) Records prescribed under 27 CFR Part 478 for the license described above shall be delivered to ATF within 30 days of the date the business is required to be discontinued or shall be documented to reflect delivery to a successor. See 27 CFR 478.127.

| Date | Signature and Title of Bureau of Alcohol, Tobacco, Firearms and Explosives Official |
|---|---|
| APR 0 9 2007 | Richard C. Alexander, Director Industry Operations |

I certify that, on the date below, I served the above notice on the person identified below by

☐ Delivering a copy of the notice to the address shown below.    ☑ Certified mail to the address shown below.

| Date Notice Served | Name of Person Served *(Please state if served on partner or officer of corporation)* |
|---|---|
| 4.9.2007 | TONY MANUELE, JR. |

Address Where Notice Served

| 7922 WILDLIFE ROAD, CHATHAM, ILLINOIS 62629 | | |
|---|---|---|
| Date | Signature of Person Serving Notice | Title |
| 4.9.2007 | | SR. OFS. OFFICER |

Note: Previous Edition Is Obsolete

ATF Form 5300.13
Revised July 2005

## BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES
## CHICAGO FIELD DIVISION

| | |
|---|---|
| In the matter of the Revocation of License<br>**Under Chapter 44,**<br>**Title 18, United States Code** )<br><br>**Licensee :**<br>**Tony Manuele Jr.**<br>**d/b/a Tony's Sporting Goods**<br>**7922 Wildlife Road**<br>**Chatham, IL 62629**<br>**FFL # 3-37-167-01-6D-33941** | **FINAL NOTICE** |

### I. Background

Tony Manuel Jr. (Licensee) holds a Federal firearms license (FFL) as a dealer in firearms other than destructive devices. As a result of the Licensee's willful violations of the Gun Control Act which were discovered during a 2006 inspection, the Director of Industry Operations of the Chicago Field Division issued a Notice of Revocation of License (ATF Form 4500) to Licensee. This Notice is dated July 26, 2006 and was delivered via certified mail. Licensee requested a hearing in accordance with Title 18, United States Code, Section 923(f). A Notice of Hearing was issued via certified mail and received by Licensee. The Notice of Hearing advised Licensee of the date, time and place of the hearing, as well as of the appointment of Gary Schuster as Hearing Officer.

The hearing was held on January 30, 2007, at the ATF Springfield Field Office, 3161 West White Oaks Drive, Suite 200, Springfield, Illinois. Attorney Erika Ritt, Office of the Assistant Chief Counsel, Chicago, represented the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Present for the Government as a witness was ATF Industry Operations Investigator (IOI) Theresa Bolash. The Licensee was represented by Attorney Michael Logan. Tony Manuel Jr., owner and sole responsible party, testified on behalf of the Licensee. Gary Schuster served as Hearing Officer for the proceedings. ATF IOI Tamra Sanders observed the proceeding.

The tape recordings of the hearing and the exhibits introduced at the hearing constitute the record of this proceeding.

### II. Findings

A. From on or about September 26, 1997 to on or about January 8, 2006, Licensee willfully failed to properly maintain an acquisition and disposition record for 611 firearms in that Licensee failed to record the

ATF Form 4501

Page 1 of 5

000033

$2\emptyset A$

disposition of these firearms as required by the regulations. Of the 611 firearms, 312 are evidenced by Exhibit F[1] and remaining 299 are evidenced by Licensee's acquisition and disposition book as open entries for all firearms acquired in years 2001, 2003 and 2004 (Exhibit G). This is in violation of Title 18, United States Code, Section 923(g)(1)(a) and Title 27, Code of Federal Regulations, Section 478.125(e).

1. For the above referenced 611 firearms, there were acquisition records but no recorded dispositions.
2. Exhibit E is a record of all firearms in the Licensee's inventory as of the January, 2006 inspection of Licensee's inventory; none of the above referenced 611 firearms were discovered to be in inventory, and thus they were not recorded in Exhibit E.
3. The reason for differentiating between the firearms listed on Exhibit F and those on Exhibit G is that those in Exhibit F were scattered throughout several years of disposition; whereas, those identified by Exhibit G evidence the fact that Licensee failed to record even a single disposition for the years of 2001, 2003 and 2004.
4. As to the proof of willfulness, the need to record disposition entries is very basic to a firearms business. Licensee demonstrated his awareness of the requirement through the fact that he successfully recorded dispositions on many other occasions. Furthermore, Licensee admitted during his testimony that he was generally aware that laws and regulations governed the dealing of firearms and that he could contact ATF (and did) at anytime he had a questions. Most importantly, Licensee admitted that he knew of the specific legal requirement to record firearm dispositions.
5. Licensee, while conceding that he had actual knowledge of the requirement to record dispositions, attempted to excuse the 611 missing disposition entries by stating that he had not been inspected since receiving his license in 1991. As such, he argued that he did not realize that the regulations required him to maintain a record of the disposition of a firearm on the same line as the acquisition information in his  Acquisition and Disposition ("A&D") Book. Notably, he was not cited for failing to maintain a single acquisition and disposition line; rather he was cited for the failure to record the disposition anywhere in his records.

---

[1] All exhibit references are to those introduced during the hearing.

B. From on or about February 3, 1997 to on or about January 10, 2006,
Licensee willfully failed to properly maintain an acquisition and disposition
record in that Licensee failed to timely enter 502 acquisitions, as required
by the regulations. This is in violation of Title 18, United States Code,
Section 923(g)(1)(a) and Title 27, Code of Federal Regulations, Section
478.125(e).

442

1. According to Exhibit I, 486 firearms were recorded as
dispositions in Licensee's A&D Book despite the fact there
was no corresponding acquisition entry in the A&D Book
(Exhibit G).

2. An additional sixteen firearms were found in inventory at the
time of inspection (Exhibit E), although there was no
corresponding acquisition entry in the A&D Book (Exhibit G).

3. As to the proof of willfulness, the need to record acquisition
entries is very basic to a firearms business. Licensee
demonstrated his awareness of the requirement through the
fact that he successfully recorded acquisitions on many
other occasions. Furthermore and most importantly,
Licensee admitted during his testimony that he knew of the
specific legal requirement to record acquisitions.

4. Licensee's only defense to this violation was that he was
"doing the best he could." He did not argue that he was
unaware of the requirement, nor did he explain what might
have prevented him from complying with this known legal
obligation.

C. From January, 2003 to January, 2006, Licensee willfully failed to report to
ATF on Forms 3310.4 (Report of Multiple Sale or Other Dispositions of
Pistols and Revolvers) instances of the sale or other disposition of two or
more pistols or revolvers (or any combination of the pistols and revolvers
totaling two or more) to non-licensees during any five (5) consecutive
business days; specifically, Licensee failed to report to ATF the multiple
sales of pistols and revolvers specified in the 40 instances involving 91
firearms as referenced in Exhibit B (Notice of Revocation of License).
This is in violation of Title 18, United States Code, Section 923(g)(3) and
Title 27, Code of Federal Regulations, Section 478.126a.

1. A review of Licensee's ATF Forms 4473 (Exhibit J) and
licensee's Trace History (Exhibit K) revealed that Licensee
failed to report the sales of multiple handguns on 40
occaisions.

2. As to the proof of willfulness, Licensee demonstrated his
awareness of this requirement through the fact that he
successfully reported multiple sales from 1999-2003 on at
least eighteen occasions. He abruptly stopped making the

ATF Form 4501

Page 3 of 5

000035

required reports in 2003. Furthermore, Licensee admitted to
IOI Bolash during the inspection that he knew of the specific
legal requirement to report multiple sale transactions.

3. Licensee attempted to defend against this violation by
stating that ATF may not have received some of the multiple
sale forms despite him having forwarded the forms to them.
However, he offered no evidence to support this claim. He
also suggested that he may have some completed multiple
sale forms at his home, although he did not explain why
those, if they existed at all, were not provided to IOI Bolash
when she made such a request during her inspection.
Licensee conceded that some forms may not have been
sent into ATF for "whatever reason."

D. From the period of January, 2003 to January, 2006, Licensee willfully
failed to properly maintain ATF Forms 4473 (Firearm Transaction Record)
by not maintaining the forms in alphabetical, chronological or numerical
order as required by the regulation. This is in violation of Title 18, United
States Code, Section 923(g)(1)(a) and Title 27, Code of Federal
Regulations, Section 478.124(b).

1. At the time of inspection, Licensee was not maintaining his
ATF Forms 4473 in any order; rather, they were in a pile of
unorganized papers.
2. According to IOI Bolash, Licensee admitted during the
inspection that he "use to keep" his records in chronological
order in a binder, but the records would "fall out" and he "got
behind" in his filing.
3. As to the proof of willfulness, Licensee demonstrated his
awareness of the requirement through the fact that he
admitted to IOI Bolash during the inspection that he knew of
the requirement to maintain ordered records, particularly
ATF Forms 4473.
4. Licensee offered no defense to this violation.

## III.  Conclusions

A. I conclude that the record in this case demonstrates that Licensee is
familiar with the requirements imposed upon Federal firearms licensees.

B. I further conclude that the record demonstrates that the Licensee has
been plainly indifferent to and in many instances has acted in purposeful
disregard to these requirements.

C. Where a Federal firearms licensee knows its legal obligations and
purposefully disregards or is plainly indifferent to these obligations, such

ATF Form 4501

Page 4 of 5

violations are committed willfully. There is no requirement of bad purpose as might be imposed for purposes of criminal prosecution. Cucchiara v. Secretary of Treasury, 652 F.2d 28 (9th Cir. 1981), cert. denied 455 U.S. 948 (1982); Stein's, Inc. v. Blumenthal, 649 F.2d 463, 467 (7th Cir. 1980); Cisewski v. Department of the Treasury, 773 F.Supp. 148 (E.D. Wis. 1991). Accordingly, I conclude that Licensee willfully violated provisions of Chapter 44, Title 18, United States Code, and the regulations issued there under.

D. Finally, I conclude that the record in this case demonstrates that Licensee did willfully commit each of the acts outlined in Counts 1, 2, 5, and 6 of the Notice of Revocation, and that each of these acts was committed willfully. These violations demonstrate knowledge and purposeful disregard on the part of the Licensee, and they establish plain indifference to the legal requirements. I do not find Counts 3, 4, 7 and 8 to be willful violations; consequently, this Final Notice is not issued in regards to those counts.

## IV.    Decision

Based on the record before me, it is my decision that Tony Manuel Jr.'s license as a dealer in firearms other than destructive devices is revoked under the authority of Title 18, United States Code, Section 923(e).

Dated: 4/9/07

Richard C. Alexander
Director of Industry Operations
Chicago Field Division
Bureau of Alcohol, Tobacco and Firearms

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

TONY MANUELE JR.

7922 WILDLIFE RD.

CHATHAM, IL
                    62629

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    □ Agent
                                     □ Addresse

B. Received by ( Printed Name)       C. Date of Deliver
                                     4/24/07

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
   □ Certified Mail      □ Express Mail
   □ Registered          □ Return Receipt for Merchandise
   □ Insured Mail        □ C.O.D.

4. Restricted Delivery? (Extra Fee)    □ Yes

2. Article Number
   (Transfer from service label)

7003 0500 0005 5808 4379

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-154(

---

**U.S. Postal Service**
**CERTIFIED MAIL. RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

Postage          $

Certified Fee

Return Reciept Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees    $

Sent To
        TONY    MANUELE    JR.
Street, Apt. No.;
or PO Box No.    7922  WILDLIFE  RD.
City, State, ZIP+4
                 CHATHAM        62629

PS Form 3800, June 2002

7003 0500 0005 5808 4379

000038